UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBRA RONNING,

              Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

              Defendant.

Case No. C11-30-JCC-BAT

**REPORT AND RECOMMENDATION**

Debra Ronning seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erroneously disregarded the opinions of Jordan Firestone, M.D. and failed to provide clear and convincing reasons to reject her testimony. Dkt. 21. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Debra Ronning is currently 59 years old, has completed two years of college, and has worked as a data processing specialist, sales associate, driver, office temporary worker, call center operator, answering service operator, reading tutor, and caregiver.[1] On June 14, 2008, she

---

[1] Tr. 146, 174, 193.

REPORT AND RECOMMENDATION - 1

applied for benefits, alleging disability as of July 1, 2008.[2] Her applications were denied.[3] After conducting a hearing on June 17, 2010, the ALJ found Ms. Ronning not disabled. Tr. 6. As the Appeals Council denied Ms. Ronning's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[4] the ALJ made the following findings:

**Step one:** Ms. Ronning had not worked since June 30, 2008.

**Step two:** Ms. Ronning had the following severe impairments: bilateral knee degenerative joint disease and obesity.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:** Ms. Ronning could perform light work except she can stand or walk up to 6 hours in an 8 hour workday, in 30 minute intervals with stretch or sit down breaks. She can engage in all postural movements frequently except she can only occasionally climb ramps/stairs; she must avoid climbing ladders/ropes/scaffolding; she must avoid all exposure to toxic fumes. She has no other restrictions or limitations, including no sitting restrictions.

**Step four:** Ms. Ronning could perform her past work.

**Step five:** As there are jobs Ms. Ronning can perform, she is not disabled.

Tr. 11-15.

**DISCUSSION**

**A.     The ALJ's evaluation of Dr. Firestone's opinions.**

On February 16, 2008, Dr. Jordan Firestone, M.D., examined Ms. Ronning and prepared

---
[2] Tr. 146, 149.
[3] Tr. 81-88.
[4] 20 C.F.R. § 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

a report that included a functional assessment. Tr. 297. The ALJ did not mention or discuss Dr. Firestone's report; Ms. Ronning contends this failure constitutes reversible error. Dkt. 21 at 14-15. An ALJ must explain why "significant, probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Dr. Firestone is an examining doctor. Even when contradicted, an ALJ may not reject an examining doctor's opinions without giving "specific and legitimate reasons" that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

Here, the ALJ erred by failing to give any reason to reject Dr. Firestone's opinions. Although the ALJ erred, the Court may reverse the Commissioner's final decision only if the ALJ's error was harmful. Where an ALJ errs by failing to provide any reason for rejecting relevant evidence, the error is harmless where the Court "can confidently conclude that no reasonable ALJ, when not making the same error as the ALJ, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Ms. Ronning argues, and the Court agrees, the ALJ's error was harmful because Dr. Firestone's opinions were inconsistent with the ALJ's residual functional capacity assessment.

The ALJ found Ms. Ronning could do light work, walk or stand for 6 hours in an 8 hour day with breaks every 30 minutes, that she can engage in all postural movements and that she has no sitting restriction. Dkt. 23 at 2. In contrast, Dr. Firestone opined Ms. Ronning could stand and walk for 2 hours in an 8 hour day, "not more than 15 minutes in duration" because frequent ambulation is likely to aggravate her knee and degenerative arthropathy." Tr. 300. He also opined Ms. Ronner could lift up to 20 pounds occasionally and 10 pounds regularly and that her vision problems might limit her ability to do work that requires fine manipulation of small objects or scanning if text." *Id.* In determining a claimant's RFC, an ALJ must assess all the

relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work. *See* 20 C.F.R. § 416.945(a). By disregarding Dr. Firestone's report, the ALJ failed to assess all relevant evidence in arriving at Ms. Ronning's residual functional capacity.

This error carried over to the ALJ's examination of the vocational expert ("VE"). Hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)). In this case, the ALJ erred by failing to include all of the limitations contained in Dr. Firestone's report in the hypothetical questions posed to the vocational expert.

On its face, Dr. Firestone's opinion suggests Ms. Ronning's residual functional capacity may be less than "light work" as found by the ALJ. This is significant because the ALJ, himself, indicated that if Ms. Ronning could not perform light work, she might be disabled under the "grids." Tr. 74. According, the Court concludes the ALJ erred in failing to mention or discuss Dr. Firestone's opinions and that this error was not harmless. The Court also concludes that the matter should be remanded for further proceedings. A remand for an award of benefits is appropriate only where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). Here, Dr. Firestone's opinions and the impact of those opinions on Ms. Ronning's ability to work have not been discussed and need further development. The Court thus declines to decide, on review, what Dr. Firestone's opinions mean and leaves that assessment and its impact for the Commissioner to

determine on remand.

**B.     The ALJ's evaluation of Ms. Ronning's credibility**

The ALJ found Ms. Ronning's testimony about the severity of her limitations not credible. Tr. 14. As the ALJ did not explicitly find Ms. Ronning was malingering, the ALJ may reject her testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in her testimony or between her testimony and conduct, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Id.* at 1284.

The ALJ rejected Ms. Ronning's testimony for three reasons. First, that "each medical provider, examiner and reviewer" found Ms. Ronning was capable of performing "light work." Tr. 14. The record does not support this assertion; as discussed above, Dr. Firestone's opinion indicates Ms. Ronning functional capacity is less than "light work." Furthermore, most of the other medical sources did not evaluate the impact of Ms. Ronning's knee problems on her ability to work. *See* Tr. 302-309; 379; 404; 410; 412-20.

Second, Ms. Ronning's daily activities such as performing household chores and riding a stationary bicycle for physical therapy are contrary to her claimed limitations. *Id.* Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th

Cir. 2007). Here, there is no indication that Ms. Ronning's activities are transferrable to the work setting. For instance, the ALJ did not find that Ms. Ronning's ability to do the dishes or vacuum established that she could perform work as a housekeeper or dishwasher. There is also no indication that Ms. Ronning's daily activities are inconsistent with her claimed limitations. Instead, Ms. Ronning stated in her function report, she makes "fast, easy meals" that take about 5-20 minutes and that she does light cleaning and laundry twice a week for 20 minutes. Tr. 246.

While an ALJ may consider a claimant's daily activities when evaluating her credibility, an ALJ may not penalize a claimant for attempting to live a normal life in the face of his or her limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The Court concludes based on the evidence of record, the ALJ improperly relied on Ms. Ronning's attempts to maintain her home and perform physical therapy to discount her credibility.

And third, the ALJ discounted Ms. Ronning's testimony because of contradictions between her claims about her knee problems and her activities. Specifically, the ALJ noted that while Ms. Ronning complained of knee problems beginning in 2004, she worked as a caregiver up to 2008 where she carried groceries, lifted a wheelchair and cleaned an apartment for an elderly woman; the ALJ also noted during this time frame, Ms. Ronning also worked at a girl's camp where she did crafts and played games. Tr. 14. The ALJ further noted when Ms. Ronning applied for benefits in 2008, she indicated she stopped working due to her eye condition, not knee impairment. The ALJ concluded that these contradictions suggest that Ms. Ronning's knee problem is not as severe as she claims.

The record, however, does not support the ALJ's conclusions. Ms. Ronning concedes her knee problems, which began around 2004, were not disabling until sometime in 2008. She contends however, that the medical evidence shows her knee problems became disabling

beginning in 2008 and is thus consistent with her testimony. There is no dispute Ms. Ronning has knee problems. The ALJ found her degenerative joint disease was a severe impairment which could reasonably be expected to cause the symptoms Ms. Ronning alleged. Tr. 11, 14.

There is medical evidence to support Ms. Ronning's contention that after 2008, her knee problems increased consistent with her testimony. For instance, Dr. Firestone opined in 2008 that Ms. Ronning could stand and walk for 2 hours in an 8 hour day, "not more than 15 minutes in duration" because frequent ambulation is likely to aggravate her knee and degenerative arthropathy. Although Dr. Firestone's opinion tends to support Ms. Ronning's claims, the ALJ apparently overlooked it. Peter Yorkkoski, PAC, PA, also opined, in a 2009 DSHS physical evaluation, that Ms. Ronning had bilateral knee pain. Tr. 398. He opined that her knee pain would affect walking and lifting and rated the level of severity as moderate. *Id.* The ALJ noted that reviewing physicians, Dennis Koukol, M.D., and Robert Hoskins, M.D., opined Ms. Ronning had no postural limitations and could perform light work. Their evaluation, however, does not mention Ms. Ronning's knee problems and provides no opinions about what limitations her knee problems would cause. Tr. 309.

There is thus little evidence showing that Ms. Ronning's knee problems decreased or were non-serious after 2008. Accordingly, the Court concludes substantial evidence does not support the ALJ's finding that there were contradictions between Ms. Ronning's claims about her knee problems and her activities.

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should reassess Dr. Firestone's opinions and develop the medical record as necessary;

REPORT AND RECOMMENDATION - 7

reassess Ms. Ronning's credibility; and reassess Ms. Ronning's residual functional capacity utilizing a vocational expert as deemed appropriate.

Objections, if any, to this Report and Recommendation must be filed and served no later than **October 5, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 21st day of September, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge